# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### MAY 1998 SESSION



**FILED**

**September 21, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

STATE OF TENNESSEE,    )
    ) C.C.A. No. 02C01-9801-CC-00009
      Appellee,    )
    ) Henry County
V.    )
    ) Honorable C. Creed McGinley, Judge
    )
ROBERT EMMET DUNLAP, JR., ) (Sale of Cocaine - 3 counts)
    )
      Appellant.    )

FOR THE APPELLANT:

Matthew M. Maddox
Maddox, Maddox & Maddox
19695 East Main Street
P.O. Box 430
Huntingdon, TN 38344

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter

Elizabeth T. Ryan
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

Robert "Gus" Radford
District Attorney General

John W. Overton, Jr.
Assistant District Attorney General
P.O. Box 686
Huntingdon, TN 38344

OPINION FILED: _____

**AFFIRMED IN PART; REMANDED**

**PAUL G. SUMMERS,**
Judge

# O P I N I O N

The appellant, Robert Emmet Dunlap, Jr., was convicted by a jury of three counts of the sale of cocaine in the Henry County Circuit Court. The court imposed concurrent sentences of ten years for each conviction. The court denied the appellant's motion for a new trial and this appeal followed. The appellant presents the following issues for our review:

> I. Whether the trial court erred in denying his motion to subpoena jurors to determine if the jury received and relied upon extrajudicial information in reaching their verdict.
>
> II. Whether the trial court erred in refusing to order the state to provide him with the criminal record of the confidential informant who testified against him.
>
> III. Whether the trial court erred in denying his motion for a judgment of acquittal on count five of the indictment.

The appellant sold cocaine to a confidential informant on May 8, 16, and 25, 1995. Gary Azbill, a special agent with the Tennessee Bureau of Investigation (TBI), testified that a confidential informant, Dan Grooms, set up the purchases of cocaine from the appellant. Agent Azbill and Grooms drove to the appellant's house on the three occasions. Agent Azbill searched Grooms and gave him money to buy the cocaine. Agent Azbill gave Grooms a microcassette recorder to record the transactions. Agent Azbill waited in the car while Grooms purchased the cocaine. A recording of each transaction was introduced into evidence. The appellant's voice was identified on the tape. Forensic scientists with the TBI lab determined that the substance purchased from the appellant was cocaine in the amount of 3.3 grams, 3.3 grams, and 6.7 grams, respectively.

Grooms testified that he worked as a confidential informant because he was facing life in prison if he did not cooperate with the TBI. Grooms had previously sold a quarter of a pound of marijuana to an undercover agent. He has a prior criminal record. Grooms was paid $100 for each buy.

The appellant argues that the court erred in denying his motion to subpoena jurors to determine whether extrajudicial information was introduced to the jury and affected the jury's deliberations. In support of the motion, the appellant attached the affidavit of his counsel's secretary, Jennifer McMackin. Ms. McMackin stated that a juror, "Mrs. Riley," told her that another of the jurors mentioned during jury deliberations that the appellant had a prior drug case for which he was not punished. Mrs. Riley refused to submit an affidavit, saying that she could not remember whether the appellant's prior drug case was mentioned during or after jury deliberations. Ms. McMackin further stated that she contacted another juror, Jeffrey Allen, who told her that he remembered a discussion about the appellant's prior drug case, but said that it did not affect his decision to convict the appellant. Ms. McMackin stated that Mr. Allen refused to sign an affidavit unless all the jurors were called into court.

The trial court was clearly concerned about the appellant's right to a fair trial as well as preserving the verdict of the jury from speculative allegations of misconduct. The trial court denied the appellant's motion to subpoena the jurors, stating that an appellant must offer an affidavit of a juror showing juror misconduct before the court will issue a subpoena for any jury member. Many reported and unreported Tennessee cases address the issue of whether the information in a juror's affidavit or testimony is admissible or sufficient to merit a new trial. See, e.g., State v. Coker, 746 S.W.2d 167 (Tenn. 1987); State V. Blackwell, 664 S.W.2d 686 (Tenn. 1984); State v. Dozier, No. 02C01-9610-CC-00357 (Tenn. Crim. App. filed at Jackson, Nov. 4, 1997); Patton v. Rose, 892 S.W.2d 410 (Tenn. Ct. App. 1994); Caldararo v. Vanderbilt Univ., 794 S.W.2d 738 (Tenn. Ct. App. 1990); State v. Hailey, 658 S.W.2d 547 (Tenn. Crim. App. 1983). See generally Neil P. Cohen et al., Tennessee Law of Evidence § 606.1-.2, at 328-36 (3d ed. 1995). We were unable to find any Tennessee decisions addressing what evidence must be presented to merit

questioning jurors about narrowly drawn issues of jury misconduct, as distinquished from evidence warranting a new trial.

We begin our analysis by reviewing what evidence is admissible to impeach a jury verdict at a motion for new trial. Tennessee Rule of Evidence 606(b) provides:

> Inquiry Into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotion as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Id. (emphasis added).

Extraneous information includes a juror's personal knowledge of an accused's prior criminal record or arrest. See Cohen, supra, § 606.2 at 333.d. 1995). The information would be prejudicial if it influenced the jury's verdict. See Patton v. Rose, 892 S.W.2d 410 (Tenn. Ct. App. 1994). Of course, a juror's personal knowledge would have to be divulged to influence the jury's verdict. The prior conviction or arrest would be personal information directly involved in the prosecution of the accused, but not in evidence. See Caldararo v. Vanderbilt Univ., 794 S.W.2d 738, 744 (Tenn. Ct. App. 1990).

Having determined that a juror's revelation of an accused's prior arrest or conviction not in evidence to other members of the jury is extraneous information about which jurors may testify, we must next determine whether Ms. McMackin's affidavit is sufficient evidence to verify further investigation by the trial court. Ms.

McMackin's statements about what the two jurors told her is hearsay and would be insufficient evidence to justify a new trial. The nature of the admissible evidence, that the appellant was arrested in a prior drug case and not punished, is potentially substantially prejudicial. Two jurors admitted that the information was discussed, albeit one juror equivocally stated so. Neither juror would give the appellant an affidavit. One juror refused to give an affidavit unless the entire jury was questioned. Requiring a defense attorney to present a juror's affidavit of prejudicial misconduct to have the trial court question jurors about the misconduct places the defense in a difficult situation. Jurors may admit that they received extraneous information but refuse to give an affidavit for fear of the reaction of the other jurors or the community. Indeed, if the defense could produce an affidavit, then it may have simultaneously proven its right to a new trial.

We are mindful of the discretion of the trial court and the inviolate nature of jury verdicts. However, where as here, the defense has come forward with evidence of potentially prejudicial extraneous information, the trial judge should investigate the matter further to ensure that the defendant has received a fair trial.

> A trial judge is generally in the best position to evaluate the critical question of whether the jury's exposure to extra-record evidence prejudiced the defendant. Thus, when there is an issue with regard to the propriety of a jury's conduct, it is the responsibility of the trial judge to insure that the jury's verdict is in no way tainted by improper outside influences; as a rule, in every case where the trial court learns that a member or members of the jury may have received extra-record information with a potential for substantial prejudice, the trial court must determine whether the members of the jury have been prejudiced, and, having become aware that extrinsic influence or information may have been brought to bear upon the jury, must investigate the alleged wrongdoing. The trial court has wide discretion in deciding how to pursue an inquiry into the nature and effect of extra-record information that comes to a juror. The judge's broad discretion in this regard extends to the decision whether to summon and investigate jurors due to alleged exposure to prejudicial information or improper outside influence. Potentially suspicious circumstances do

> not justify such an inquiry. Something more than unverified conjecture must be shown.

75B Am. Jur. 2d Trial § 1640 (1992).

This case does not authorize fishing exhibitions into jury deliberations. We are aware that Ms. McMackin's affidavit contains little evidence of the prejudice. We are also aware that the evidence of guilt in this case is substantial. We are not, however, willing to endorse a rule that requires a defendant to produce the affidavit of a juror just to have the court inquire into the verdict where, as here, the alleged information is extraneous and the fact that it was revealed during deliberations was stated by two jurors to the affiant. Therefore, we remand this case to the trial judge to investigate the following questions in the manner that the judge sees fit: (1) did the jury receive information from a juror about the appellant's past criminal history, and (2) did the information influence a juror's verdict. If the answer to both of these questions is in the affirmative, then the trial judge shall order a new trial.

The appellant argues that the trial court erred by failing to order the state to disclose the prior criminal record of confidential informant Grooms. The appellant admits that the state is not required to provide a defendant with the criminal records of the state's witnesses. See State v. King, 718 S.W.2d 241 (Tenn. 1986); State v. Workman, 667 S.W.2d 44 (Tenn. 1984). The appellant contends that the state's failure to provide Grooms' criminal record violates his right to due process under Brady v. Maryland, 373 U.S. 83 (1963).

A panel of this Court recently addressed this issue in State v. Copeland, No. 01C01-9703-CR-00085 (Tenn. Crim. App. filed at Nashville, Apr. 3, 1998). In Copeland, the appellants contended that the state's failure to inform them of a confidential informant's record violated their rights to due process under Brady, meriting a new trial. The Court stated:

> In Brady, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Evidence favorable to an accused includes that which may be used to impeach the prosecution's witnesses. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). However, "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

Copeland, No. 01C01-9703-CR-00085 (Tenn. Crim. App. filed at Nashville, Apr. 3, 1998).

The Court in Copeland found no merit to the appellant's issue because the confidential informant's criminal record was not material to the outcome of the trial. The Court noted that the defense established the confidential informant as a paid "snitch." The Court also noted that the testimony of the officer who accompanied the informant on the drug buy was the same as the informant's testimony. In other words, the appellants failed to establish a reasonable probability that the results of the trial would have been different if they had been provided the criminal record of the informant.

Likewise, in the case at bar, Grooms' criminal record was not material to the outcome of the case. On cross-examination, Grooms testified that he had a prior felony conviction for aggravated assault. When asked whether he had any other felony convictions, Grooms replied, "You would have to check on my records. I just don't know." Grooms clearly admitted that he had other convictions. Grooms admitted that he was a paid "snitch." Grooms admitted that he was cooperating with the TBI to avoid life in prison. In addition to Grooms' testimony, the microcassette tapes and the testimony of Agent Azbill are evidence of the transactions. We do not believe that the results of the

appellant's trial would have been different had he provided the complete criminal record of Grooms to the appellant. This issue is without merit.

The appellant states in his last issue that the trial court erred in denying his motion for a judgment of acquittal on count three of the indictment. Count three of the indictment charges the appellant with selling cocaine on May 16, 1995. The appellant's "argument" discusses count five of the indictment which charges the appellant with selling cocaine on May 25, 1995. The evidence is sufficient to support the convictions for both counts. We will address the appellant's "argument." The appellant argues that there is no evidence that Grooms purchased cocaine from the appellant on May 25th, other than "a poor quality audio tape which does not indicate on its face" that Grooms purchased cocaine from the appellant.

When the trial court is presented with a motion for judgment of acquittal, the only concern is the legal sufficiency, as opposed to the weight, of the evidence. See State v. Campbell, 904 S.W.2d 608 (Tenn. Crim. App. 1995). To determine whether the evidence is insufficient to sustain the conviction, the trial court must consider "the evidence introduced by both parties, disregard any evidence introduced by the accused that conflicts with the evidence adduced by the State, and afford the State the strongest legitimate view of the evidence, including all reasonable inferences which may be drawn from the evidence." Id. (citing State v. Blanton, 926 S.W.2d 953, 957-58 (Tenn. Crim. App. 1996); State v. Hall, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983)).

The evidence is sufficient to support the appellant's conviction for the sale of cocaine to Grooms on May 25, 1995. Agent Azbill testified that he and Grooms went to the appellant's residence to purchase cocaine on May 25th. Agent Azbill testified that he searched Grooms and gave him a microcassette recorder and money to buy the cocaine. Grooms returned with two "baggies" of

cocaine and the recorder. The tape of the transaction was introduced into evidence. Agent Azbill identified the voices on the tape as those of the appellant, the appellant's wife, Grooms, and two unidentified voices of persons who left before the transaction. The substance purchased was identified as cocaine. Although the transaction is unclear on the tape, Agent Azbill's testimony, along with that of Grooms, is sufficient evidence to support the conviction. Grooms testified that on one occasion he purchased a quarter of an ounce of cocaine which was packaged in two plastic baggies from the appellant. Grooms testified that two people were leaving the appellant's house on the day that he purchased the two "baggies" of cocaine from the appellant. This issue is without merit.

This case is remanded to the trial court for proceedings consistent with this opinion. Aside from the issue on remand, the judgment of the trial court is affirmed in all respects.

_____
PAUL G. SUMMERS, Judge

CONCUR:


_____
JOHN H. PEAY, Judge


_____

THOMAS T. WOODALL, Judge